## JESS BALDRIDGE V. THE STATE.

### No. 2583.  Decided June 3, 1903.

**1.—Bill of Exceptions to Admitted Testimony.**

To be sufficient, a bill of exceptions to the admission of testimony must state enough of the facts, in connection with the objectionable testimony, to show that the court committed an error in admitting it.

**2.—Same.**

Unless the testimony was obviously inadmissible, an objection that it was irrelevant and inadmissible is insufficient and improper.

**3.—Same.**

A ground of objection stated in a bill of exceptions is not tantamount to a certificate for the judge that such fact existed; the bill itself must state the facts, as a fact, showing what the testimony was as admitted.

**4.—Same.**

The court is not authorized to refer to the statement of facts to help out a bill of exceptions to the admission or rejection of testimony in the absence of a reference to the statement of facts in aid of such bill.

**5.—Rape by Fraud—Experiment Evidence.**

On a trial for rape, where it was contended that defendant administered cantharides on candy to the prosecutrix, it was inadmissible to allow experi-

45 Crim.—13.

ments before the jury as to the absorption of cantharides dropped on candy, when the testimony adduced was doubtful as to the administration of this drug, and doubtful as to the effect produced by its administration upon females of the age and condition of prosecutrix.

**6.—Impeachment of Defendant as Witness.**

An attempt to impeach a defendant witness upon matters not relevant to any issue in the case, or upon an immaterial issue by putting witnesses upon the stand to contradict him as to such issue, is obviously inadmissible and calculated to prejudice defendant.

**7.—Same.**

Where defendant, as a witness, had testified that he had, on the day of the alleged offense, walked from church to the house of a certain party, it was inadmissible to impeach and discredit him by a witness who testified that defendant rode with him in a wagon to said house—the matter being immaterial.

**8.—Rape by Fraud—Charge of Court.**

On a trial for rape by fraud, where the prosecutrix stated that by the administration of the drug her passions were excited and aroused, it was error for the court, in its charge, to submit the issue of stupor weakening her powers of resistance to the carnal act.

**9.—Rape—Evidence Insufficient.**

See opinion for facts held insufficient to support a conviction of rape accomplished by fraud, through the administration of a drug.

Appeal from the District Court of Hill. Tried below before Hon. W. Poindexter.

Appeal from a conviction of rape by fraud; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the rape of Tavie Shelley, on the 21st day of July, 1901, by force, threats and fraud; the proof being that it was accomplished by administering candy poisoned with a drug producing unnatural sexual desire.

The case is sufficiently stated in the opinion.

*Vaughan & Works,* for appellant, filed an able brief and argument.

*C. F. Greenwood,* County Attorney; *B. Y. Cummings,* Assistant County Attorney; *Spell & Phillips* and *Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of rape under an indictment charging rape by fraud. The proof tended to show that the fraud consisted in the administration of some drug calculated to excite passion, administered in candy by appellant to prosecutrix, a girl about 18 years of age. Appellant denied both the act of intercourse and the administration of any drug.

Appellant assigns as error the admission of certain testimony of physicians with reference to the drug alleged to have been given by appellant to prosecutrix. As presented, we do not believe any of these bills properly present a question for review. In order to illustrate what we mean, the first bill is here quoted: "Dr. J. J. Robert, a witness for the State, being on the stand, was asked the following question by State's counsel: 'Q. What would be the effect on a young girl, healthy, strong,

17 years old, just recovering from her monthly, administering this drug' (referring to tincture of cantharides) ? To which question and answer thereto defendant objected, on the ground that same presented a subject not in issue in the case, and was irrelevant and inadmissible, as it did not tend to prove any fact in issue, which objection the court overruled and permitted said witness to answer, as follows: 'The administration of any medicine depends very largely upon the condition of the person taking it at that time. Physicians know that just about the menstrual period, or just following the menstrual period, their skill is especially directed toward the medicine bringing about an effect on these special organs.' To which action of the court in overruling defendant's objection to said question and permitting the witness to answer, as above stated, defendant then and there excepted, and here tenders his bill of exceptions number 1, asks that same be approved by the court." In the first place, his bill does not show the conditions or environments under which the evidence was admitted. The bill of exceptions should always be full enough to show the error complained of. When the bill is to the admission of testimony, there must be enough facts stated in connection with the objectionable testimony to show that the court committed an error, under the circumstances, in admitting it. Cline v. State, 34 Texas Crim. Rep., 357; McGlasson v. State, 38 Texas Crim. Rep., 351; White's Ann. Code Crim. Proc., sec. 1123, subdiv. 2. Now, testing this portion of the bill by the rule above stated, none of the circumstances are presented which would show that the court ought not to have admitted this testimony. There are conditions under which it would be entirely proper for the court to have permitted the expert witness to have testified concerning the matter inquired about. If appellant had stated as a fact that there was no evidence adduced showing the character of drug administered to prosecutrix, this would have been sufficient; or enough of the evidence concerning said drug might have been shown so that this court might see the circumstances under which it was proposed to illustrate the testimony. Again, the grounds of objection here stated are that said testimony was irrelevant and inadmissible. This character of objection has been held improper, unless the testimony was obviously inadmissible. Hamlin v. State, 39 Texas Crim. Rep., 579. Moreover, we would observe that the answer of the witness does not, to our minds, show how the testimony, although it may have been illegal, could have injuriously affected appellant. The answer was of a most general character, and really indicates nothing.

The second bill is in very much the same condition. We note here, however, appellant "objected to the evidence of the expert witness because there was no proof that tincture of cantharides had been administered to prosecuting witness, Tavie Shelley, in candy or otherwise." We have frequently held that a ground of objection stated is not tantamount to a certificate of the judge that the fact existed. This should be shown as a fact in the statement of the bill itself; that is, the bill

should have stated here in synoptical form the testimony tending to show the character of drug administered in the candy, and then we would be enabled to determine whether or not the court was justified in admitting testimony concerning cantharides. White's Ann. Code Crim. Proc., sec. 1123, subdivs. 2, 4. Of course it will be conceded, if there was no testimony concerning the nature of the drug, or not sufficient as tending to show that the drug alleged to have been administered was cantharides, then the court erred in admitting any testimony, expert or otherwise, in regard to the effect that cantharides would have on a female 17 years of age.

What has been said above with regard to these bills also applies to bills of exception numbers 8 and 9, which relate to experiments before the jury with regard to the absorption of cantharides dropped on lumps of candy. It may be observed, in this connection, that the prosecution depended on the administration by appellant of cantharides in lumps of candy, claimed by the State to have been given to prosecutrix; and if we recur to the statement of facts it is doubtful, to our minds, whether there was sufficient testimony to authorize the introduction of experiments and testimony in regard to the administration of this drug and the effect produced on females of the age and condition of prosecutrix. But, as stated, we are not authorized to refer to the statement of facts to help out the bills of exception to the admission or rejection of testimony, in the absence of reference to the statement of facts in aid of such bills.

Bills of exception 3 and 4 relate to the action of the court permitting the State, in cross-examination of defendant, to ask him in regard to his conduct with other girls; that is, if he had not been in the habit of having intercourse with other girls. He answered in the negative. Bills 5 and 6 show an attempt to impeach him by the introduction of witnesses, whom, it was alleged, would testify that he had told them such was his habit. All this testimony was objected to, on the ground that it was not competent to ask appellant such questions, the same not being relevant to any issue in the case. And even if it was permitted to cross-examine about such matters, it was not competent to impeach on his answers; and the attempt to impeach him was calculated to prejudice him before the jury. We do not believe it was proper to have introduced the impeaching witness, as the examination of appellant was obviously upon an immaterial issue. And placing witnesses on the stand by whom it was alleged appellant would be contradicted as to these matters, although the testimony was rejected, was calculated to make the jury believe he had lied in regard thereto; and where impeaching testimony is so obviously inadmissible, we are not prepared to say that the action of the court was without prejudice to appellant.

As presented in bill number 10 there was no error in admitting the testimony shown.

Appellant objected to the impeaching testimony of Boyd Wooten in

regard to how he reached Mrs. Phillips' on the Sunday of the alleged offense. In appellant's testimony, he swore that he walked from church to Mrs. Phillips' to dinner. Boyd Wooten was introduced by the State to show that this was not true, but that he rode with witness in his wagon from church to Mrs. Phillips' house on that occasion. This impeaching testimony was objected to upon the ground that it was an immaterial issue; that it was not a controverted fact that appellant was at Mrs. Phillips' on that day and at that time, and there was nothing in the case to show it was material how he got there. We agree with this contention. However, the effect of the testimony was to impeach and discredit appellant, and to show the jury that upon this immaterial issue he had testified falsely, and was calculated to make the jury believe he may have testified falsely in regard to other matters which were material. Therefore we believe the testimony was hurtful to appellant. Williford v. State, 36 Texas Crim. Rep., 414; Fred Jenkins v. State, decided at the present term.

In appellant's motion for new trial he reserved an exception to certain charges of the court, none of which we deem material except one. In the court's charge throughout, when he applied the law to the facts of the case the court instructed the jury, if they believed appellant administered to prosecutrix in candy some substance or drug which produced in prosecutrix such unnatural sexual desire, *or such stupor* as that her powers of resistance were so weakened, etc., and that by such means he obatined carnal intercourse of her, etc., to find him guilty. The objection is, that the court presented to the jury the theory of stupor rendering prosecutrix unable to resist, whereas there was no evidence suggesting stupor on the part of prosecutrix. We have examined the record in this regard, and find there was no testimony indicating stupor. On the contrary, prosecutrix was excited and her passion aroused, as she stated, by the administration of the drug. Stupor means a different thing from excitement. It signifies a "suspension or great diminution of sensibility; a state in which the faculties are deadened or dazed." There being no evidence suggesting this condition, the court was not authorized to submit it to the jury.

Appellant further seriously contended that the facts are not sufficient to sustain this conviction. Without reciting them in detail, we would observe that they present a very remarkable case. Prosecutrix testified to a slight acquaintance with appellant prior to the alleged offense; that they casually met on Sunday, July 21st, and ate dinner at a neighbor's, going there from church. When she went from church to dinner she had no idea appellant would be there, and his testimony also shows that the meeting was casual. She states that after dinner another young couple, Mr. Perry and Miss Phillips, herself and appellant took a walk to the spring, some half-mile from Mrs. Phillips' residence. She says that the couples separated there. Appellant gave her some candy, and her passion almost immediately became aroused and excited, and he proceeded to copulate with her. Her testimony indicates

that the candy must have contained some drug as it had a nasty bitter taste, and directly after she had eaten it, it produced an unnatural sexual desire on her part; that she had never before had intercourse with any man, but she felt irresistibly drawn towards appellant; that the effect of the drug continued with her for several days, and on the same night appellant accompanied her to church, and had intercourse with her twice on the way. If her testimony is credible, of course the State makes out a case. But it is strongly gainsaid by the testimony of appellant and other witnesses, in connection with the physical facts surrounding the case. The couple that accompanied them to the spring testified to a state of facts which rendered it next to impossible that the act of intercourse occurred at the spring. They state that they were in full view of the parties during the time they remained there, and there is also testimony tending strongly to show that the acts of copulation could not have occurred that night, as testified by prosecutrix. Besides this, she made no outcry, nor did she relate the matter to anyone until a short time before she was delivered of the child, some eight and one-half months after the alleged offense. Strange to say, according to her own testimony she continued to associate with appellant after this occurrence; and on the next occasion when she met him she brought up the subject of the candy again, remarking to appellant that there was something the matter with the candy he had given her, and they had a conversation about it. But she told no one else. The physicians who testified with reference to cantharides, which it seems was assumed to be the drug administered, state that the effect would be to produce sexual desire; but none of them state that an ordinary dose would produce almost immediate sexual desire; and that an extraordinary dose, the effect of which would continue for some time, would manifest itself almost immediately in vomiting, purging and other violent symptoms. None of these symptoms were manifested, and evidently if this drug was administered, it must have been in a small dose of from five to ten drops. The effect of this would not have been almost immediate, as related by her, and would not have continued, as she testified, for two or three days thereafter. Reviewing the whole testimony, we do not believe it is of such cogent character as authorized the jury to believe that he was guilty of the offense beyond any reasonable doubt.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*